Good morning. May it please the Court, my name is Brian Cain. I'm a Deputy Attorney General. I'm here on behalf of Idaho's Attorney General Lawrence Wosden and Idaho's Secretary of State Ben Ysursa. This case is before, before I begin, I'd like to reserve two minutes of my time for rebuttal. This case is before the Court based upon the Collateral Order Doctrine. The Idaho District Court denied the Attorney General's and Secretary of State's motions to dismiss based upon the 11th Amendment. I'd like to first turn to the Secretary of State's argument for dismissal based upon the 11th Amendment. Under, under the, under Ex Parte Young, the courts have said that there must be a fairly direct connection between the official suit and enforcement of the statute. The second inquiry is whether or not there's a threat of enforcement, which incorporates into it General Article III principles, which include the triad of injury in fact, causation, and regressibility, as well as ripeness. So showing that enforcement does not rest upon a contingent future event that may or may not occur. I think under this, within the parameters of this case and the allegations that are made, the Secretary of State clearly does not have any enforcement authority over the Voluntary Contributions Act to the extent that it would extend the 11th Amendment or it would breach the 11th Amendment immunity afforded the Secretary of State. The Secretary of State simply can't take any action. He's more of an administer than, than anything else. Well, what's the difference between administering the act and taking an affirmative action on it? Well, I think that, that in this case, for affirmative action, there has to be some sort of harm that would be created. And the Secretary of State simply can't take any final step that would create a harm. The most that the Secretary of State could do is to refer an allegation to a prosecutor. Right. Okay. Let's talk about the Attorney General, because I think that that is where the real, pardon the expression, meat and potatoes of this argument is. This case is critical at this point, because I think that the Court is facing a circumstance where the State courts of Idaho, as well as the Attorney General, are interpreting the law in one direction, and the Federal court is interpreting the law in the opposite direction. And so we're confronted with a case where the State says, we don't think the Attorney General has this authority, as reflected in State v. Summer, the latest pronouncement of the Idaho Supreme Court on the authority of the Attorney General. And the Federal court is saying, well, we think that the Attorney General does have these abilities to come in and be the primary enforcement authority. And the best way to sum this up is to look at this in terms of a TRO or an injunction. If an injunction is issued against the Attorney General only, it would not restrict the county prosecutors, because the county prosecutors have their own autonomous decision-making authority. Now, if we reverse that and we issue an injunction or a TRO against the county prosecutors, the Attorney General is precluded without being named from enforcing those statutes, because the primary enforcement authority within Idaho falls on the shoulders of the county prosecutor. Are you arguing immunity, or are you arguing that on the merits, there's no claim? There's nobody enforces this law, and they're not harmed. At this point, we're arguing immunity. We're not arguing the merits of the law. We're solely we're simply saying that there's not a connection between the Attorney General and the likely enforcement of this law as required under Ex parte Young. We don't even meet the first threshold by saying we've sued a State officer who has a fairly direct connection to the law being enforced. So that's what I'm saying. I am Are you arguing that Planned Parenthood was incorrectly decided? Is that your main argument? No, that is not my main argument, because I think that in order to say that, to make that argument, I think we get into the much broader question of this panel being bound by the Planned Parenthood decision. And I think that if you look closely at the discussion of the 11th Amendment in relation to the Attorney General in Planned Parenthood, the Court never fully resolved that issue. And if you look at page 920 of Planned Parenthood, it said we need not decide if the two are proper defendants, because the courts found fundamental problems with the underlying statute. They had a proper person in front of them in the form of the prosecutor and struck the statute down without finally resolving the issue of 11th Amendment immunity related to the Attorney General. And so based on that, we're now confronted with the situation. And I would argue that the finding in Planned Parenthood is merely dicta with regard to the Attorney General's duties. And I say that for two reasons. One is that the Court said as much within Planned Parenthood by saying they're not going to finally decide that issue within the parameters of that case. And the second is, is that the Supreme the Idaho Supreme Court issued State v. Sommer. And that case was issued after briefing was closed in the Planned Parenthood case. From my understanding at the Planned Parenthood case, the only argument presented was on the merits of the statute, not on the 11th Amendment. The panel strictly limited the discussion from that issue. But you – what is sought here is an injunction against enforcing a statute. Is that right? So if the statute requires the plaintiffs to do something, do you challenge that? I don't know. Who are they supposed to sue, then? Well, in this case, they have sued the county prosecutor. They have a county prosecutor that they've sued. And that county prosecutor has not contested the jurisdiction. And certainly you can sue a county prosecutor and then have a statute struck down. I don't think that there's a challenge to that at all. We're arguing that just because you don't agree with the statute the way it's going to be enforced doesn't give you carte blanche to sue anybody in the State there. And I think that that's consistent with the case laws, that there's got to be a connection between the person that you sue and the statute that's being – that would be enforced or sought to be enforced. I think that there's a – in this case, there's another threshold question as to whether or not there really is a harm created – that could be created by either the prosecutor or, for the sake of argument, the Attorney General, because in relation to the Voluntary Contributions Act, we don't administer payroll. The payroll is administered by whoever the employing entity is. Do you – does the Attorney General have no authority to prosecute someone who doesn't make the – The Attorney General has no primary authority. Right. Now, there is a statute that permits the Attorney General to come in as a special prosecutor. Do the county attorneys have statewide jurisdiction? No. The county attorneys are – you know, they're confined to the counties. It's a venue issue. So if the harm occurred in, for example, Bannett County or Bingham County, that's the county where the case would arise. The Attorney General – significantly in State v. Summer, the Attorney General – the court found that there was a defect because the Attorney General did not appear before having a motion made by the prosecutor and an order entered by the court to appear. And in those terms, the Attorney General simply can't show up. It's more akin to the relationship between the Attorney General and the district attorneys in Oregon, for example, or in California in the Long case. And I think that when you look at Southern Transportation and Long, those are the cases that this case is most closely similar to. With that in mind, I'd like to reserve my remaining time for rebuttal. Thank you. Thank you. May it please the Court. I'm Jeremiah Hollins for the Plaintiffs' Appellate. The defendants' arguments analytically break into two categories. Do the officers who have been sued have authority to enforce the statute that's being challenged? And secondly, the defendants argue even if they do, there isn't an imminent enough threat of enforcement. That first argument is foreclosed. It's foreclosed by the Planned Parenthood case. In Planned Parenthood, this Court held that Idaho Codes 67-14017, which says that attorney generals may assist county prosecutors, is enough to make the attorney general a proper defendant under Ex parte. Except what do you the Court went on to say, in the circumstances of this case, we need not decide whether the two are proper defendants. As to every case. Dot, dot, dot. No. That's the point there. The Court went on to say having decided. Having decided against the county prosecutor and the attorney general. And the attorney general. And the attorney general. Now, what difference does it make that the Idaho court has now said something slightly different? Do we? Well, State v. Summer. Does that undermine Planned Parenthood or do we just ignore it? No, because the Planned Parenthood courts cited State v. Summer in footnote 7. State v. Summer talked about procedures for appearing in front of a grand jury. And in any event, that was fully considered in Planned Parenthood. And the statute invoked in Planned Parenthood, discussed in Planned Parenthood, which says that the assistance power is enough, is controlling here. State v. Summer is concerned about whether the attorney general can do more than assist, whether they can take over an entire prosecution, appear before the grand jury on their own. And Planned Parenthood holds that that isn't essential. It's sufficient that Idaho law gives the attorney general the authority to assist a county prosecutor. And it's unmistakable that that right exists in this case. So Planned Parenthood is controlling on the first issue. I'll just note in passing that we have briefed extensively that there are also two specific enforcement provisions in the statutes here. The statute itself, right? Right. So the argument for the defendants really comes down to their second contention, that even if theoretically they could enforce the statute, they're really not in the process of doing it. That argument fails as a result of the Audubon Society case, whether you read it the way we do or, frankly, even if you read it the way the defendants do. In Audubon, this Court said, we reject the argument that Ex parte Young brings in ripeness, standing, imminence, other justiciability requirements beyond the normal Article III and prudential requirements. Now, we think that what this Court was saying, and I think it's clear from the opinion, was that Ex parte Young does not contain an imminence requirement, that only Article III and prudential requirements impose that requirement. We're right on that. This appeal is not properly here because there is no right to an interlocutory appeal on rulings as to standing or justiciability. That is clear. And the reason we think Audubon should be read as saying that those concerns are no part of the Eleventh Amendment is twofold. First, this Court's analysis in Audubon was that the Eleventh Amendment under Ex parte Young is concerned with questions of who, not when. The question is, are you suing someone who is indeed authorized to be enforcing, or are you just suing a State official at random because you really just want to sue the State? So once it's established that we've sued someone who can enforce, Audubon indicates that is the end of the Eleventh Amendment inquiry. And Audubon is very clear on that, because if you look at the opinion, Audubon announces its Eleventh Amendment holding that there is no Eleventh Amendment bar to the suit before the part of the opinion that even talks about imminence. So we think it's very clear that the Audubon Court is saying that issues of right misstanding imminence are not part of the Ex parte Young equation, which means no jurisdiction for an interlocutory appeal. But even if we were wrong on that, the defendants acknowledge that at the very least, Audubon says Ex parte Young imposes no ripeness or imminence requirements beyond what normal Article III and prudential doctrines entail. And therefore, what one must do if the Court were to conclude that the appeal is properly heard on this issue is to look at the Article III and prudential requirements that apply, whereas in this context, you have a plaintiff that says there's a statute aimed directly at my First Amendment activity, and in order to avoid violating that statute, I've had to self-censor myself. I've had to refrain from First Amendment activity. The Supreme Court in Virginia booksellers, and this Court more recently in the Arizona Right to Life Political Action Committee case, unambiguously holds that in that context, there is no requirement of showing that any sort of prosecution is imminent, because, of course, it isn't, because what you're doing is changing your conduct, refraining from First Amendment conduct. Sotomayor, to the extent that we have an Ex parte Young question of connection to enforcement of the statute, you acknowledge that there is an appropriate interlocutory appeal on the immunity question? Right. There's an appropriate – there would be an appeal on that issue which is resolved by Planned Parenthood. Right. The appeal of all of these imminence issues is not properly heard. Yeah, there are other questions. Even if it were, it's defeated by the Virginia booksellers' doctrine. And the Arizona Right to Life PAC case is on all fours. That was also a statute limiting speech in connection with political activity. They allege, as we've alleged in the declarations here, that in order to comply with the statute, they have to suppress their political activities. And this Court unambiguously rejected the notion that they somehow had to show an imminent prosecution in order to sue. So for that reason, we think it's clear that the decision blow was correct. Thank you. If I could address Judge Graber's question regarding Planned Parenthood at the outset, and specifically in how it regards as to whether or not Planned Parenthood conclusively determined the issue of the scope of the Attorney General's authority within the State of Idaho. And I think that it did not. And the reason why is that the one reference to State v. Summer, which I think is the case that this Court should really take the hardest look at, the one cite to it was in a footnote of the case where the only portion of the case it cited to was dicta. And it said, and it simply refers to the supervisory powers of the Attorney General. If you look at the statutes that were involved in State v. Summer, they were insurance fraud statutes that had the same language or very similar language to that included in the instant statutes in this case, where the authority is given to the prosecuting attorney or the Attorney General. And in State v. Summer, the Court said, irrespective of that express grant of authority in the statute, the primary enforcement authority within Idaho rests with the county prosecutor, not with the Attorney General. They have to go to every county. Would they have to sue every county to get an injunction? I don't think so. I think that practical terms of jurisprudence show that if you get an injunction and a statute is struck down, which is the ultimate goal that they're shooting for here, then it would apply statewide if the statute is struck down. And so I don't think that you need to necessarily – I mean, if you get an injunction Once it gets to a court that has statewide jurisdiction. Right. It will. Okay. Thank you. With that being said, Your Honor, thank you. Thank you. The case just argued is submitted.
judges: Schroeder, Goodwin, Graber